IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Case No. 1:22-cv-00072-KG-LF

ADLER MEDICAL, LLC, WALT ARNOLD
COMMERCIAL BROKERAGE, INC., XUAN
NATION, LLC, and NM CCIM CHAPTER
OF THE COMMERCIAL INVESTMENT
REAL ESTATE INSTITUTE,

    Plaintiffs,

v.

BLAINE HARRINGTON III,

    Defendant.

---

BLAINE HARRINGTON III,

    Counter-Plaintiff,

v.

ADLER MEDICAL, LLC, WALT ARNOLD
COMMERCIAL BROKERAGE, INC., XUAN
NATION, LLC, and NM CCIM CHAPTER
OF THE COMMERCIAL INVESTMENT
REAL ESTATE INSTITUTE,

    Counter-Defendants.

---

## HARRINGTON'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

Defendant/counter-plaintiff Blaine Harrington III ("Harrington") hereby files this motion to disqualify Jeffrey Squires, Esq. as counsel for plaintiffs/counter-defendants Adler Medical, LLC ("Adler Medical"), Walt Arnold Commercial Brokerage, Inc. ("Walt Arnold Commercial Brokerage"), Xuan Nation, LLC ("Xuan Nation"), and NM CCIM Chapter of the Commercial Investment Real Estate Institute ("NM CCIM") (collectively, the "Plaintiffs").

1
COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

# INTRODUCTION

It is axiomatic that a Plaintiffs' choice of counsel should not be disturbed absent compelling circumstances. Unfortunately, those circumstances exist here (and in each and every other similar case in which Mr. Squires has taken it upon himself to become the primary fact witness for the claims asserted by his clients). The Complaint in this action (as in all of the others) makes bold factual assertions against Harrington – he 'lures' businesses into downloading his photographs[1] by knowingly allowing his photographs to be published on the world wide web without attribution to him[2] – all as part of an 'intentional' scheme to not inform members of the public of Harrington's claim of ownership.[3] These are ***Plaintiffs'*** allegations/judicial admissions[4] – yet not a single one of the Plaintiffs has an iota of evidence/knowledge concerning these supposed facts. Rather, each of the Plaintiffs has pointed to Mr. Squires as being the only person with knowledge concerning Plaintiffs' allegations or stated that any knowledge on the matter was gained through conversations with Mr. Squires (of which Mr. Squires blocked any inquiry into).

An attorney must be a zealous advocate. He cannot, however, make up fanciful allegations on behalf of his clients, be the sole source of knowledge concerning those allegations, and prevent any inquiry into the factual basis thereof by purporting to use the attorney-client privilege as both a sword and a shield. When he does so (as Mr. Squires has done here), disqualification is the proper remedy.

---

[1] See Complaint, at ¶¶ 5, 11.

[2] Id. at ¶ 9.

[3] Id.

[4] See, e.g., Skyline Potato Co. v. Rogers Bros. Farms, Inc., Civil Action No. 10-cv-02353-WJM-KLM, 2011 U.S. Dist. LEXIS 76804, at *14 (D. Colo. July 15, 2011).

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

# BACKGROUND

I.     **Plaintiffs' Allegations**

1.     On February 1, 2022, Plaintiffs filed their Complaint in this lawsuit. Generally stated, the Complaint alleges that each of the Plaintiffs received a demand letter from Harrington with respect to the alleged copyright infringement of one of his professional photographs.

2.     Rather than attempt to resolve this matter without judicial intervention or face a lawsuit for copyright infringement, Mr. Squires joined the Plaintiffs together and won the proverbial race to the courthouse by filing the Complaint and asserting their own claims for declaratory judgment, violation of New Mexico's Unfair Practices Act, and prima facie tort.

3.     As discussed above, the Complaint contains a multitude of 'factual' assertions concerning Harrington's alleged business practices, plainly and unabashedly alleging that Harrington runs a 'scheme' whereby he 'lures' innocent infringers (such as Plaintiffs) into downloading his photographs from sites on the internet that Harrington 'knowingly' allows to post his photographs without proper attribution to him.

II.    **The Rule 30(b)(6) Deposition Notices**

4.     On August 8, 2022, Harrington took the Rule 30(b)(6) depositions of the corporate representatives for both Adler Medical and NM CCIM. On August 12, 2022, Harrington took the Rule 30(b)(6) depositions of the corporate representatives for both Xuan Nation and Walt Arnold.

5.     The Rule 30(b)(6) notices for each deposition[5] contained a list of twenty-eight (28) distinct topics for Plaintiffs to provide testimony, many of which pertained specifically to the factual basis for Plaintiffs' allegations concerning Harrington's alleged business practices. A

---

[5]    True and correct copies of the Rule 30(b)(6) deposition notices are attached hereto as Composite Exhibit "A."

handful of these topics are identified below:

> 16. The factual basis for your contention that Harrington intended to have his photos be available on websites where innocent users might be induced to download his photographs.
>
> 17. The factual basis for your contention that Harrington developed and pursues a scheme whereby he lures individuals into downloading images of photographs in which he claims to own copyright.
>
> 18. The factual basis for your contention that Harrington seeks legally unreasonable, excessive and extortionate amounts as a part of an orchestrated scheme.
>
> 19. The factual basis for your contention that Harrington has been and is misusing protection provided by the U.S. Copyright Act to owners of works of authorship in threatening to sue Plaintiffs.

6. Plaintiffs did not object to or otherwise move for a protective order with respect to any of the topics, and each of the Plaintiffs indicated that it was prepared to offer testimony with respect to the foregoing topics.[6]

### III. Each of the Plaintiffs Knows <u>Nothing</u> About Plaintiffs' Own Allegations

7. Each of the Plaintiffs has accused Harrington of 'luring' innocent companies into downloading his photographs from websites on which Harrington 'knowingly' allows his photographs to be posted, all as part of some calculated 'scheme' by Harrington to extort money from unsuspecting 'victims.'

---

[6] See Deposition Transcript of Adler Medical, dated August 8, 2022 (the "Adler Medical Tr."), a true and correct copy of relevant portions of which is attached hereto as Exhibit "B," at 7:15 – 7:24; Deposition Transcript of NM CCIM, dated August 8, 2022 (the "NM CCIM Tr."), a true and correct copy of relevant portions of which is attached hereto as Exhibit "C," at 6:22 – 7:12; Deposition Transcript of Xuan Nation, dated August 12, 2022 (the "Xuan Nation Tr."), a true and correct copy of relevant portions of which are attached hereto as Exhibit "D," at 7:15 – 9:21; Deposition Transcript of Walt Arnold Commercial Brokerage, dated August 12, 2022 (the "Walt Arnold Tr."), relevant portions of which are attached hereto as Exhibit "E," at 5:20 – 7:5.

8. The seriousness of these allegations cannot be overstated – indeed, Plaintiffs contend the above-described conduct amounts to a violation of New Mexico's Unfair Practices Act and precludes Harrington from enforcing his rights under the Copyright Act.

9. Given the confidence by which Plaintiffs present their allegations, one would assume each of the Plaintiffs possesses material knowledge supporting the evidentiary basis thereof – or at least sufficient knowledge to satisfy the mandates of Fed. R. Civ. P. 11(b).[7] Unfortunately, as it turned out, one would have been very wrong in making that assumption.

10. It is not hyperbole to state that each of the Plaintiffs knows ***nothing*** about Plaintiffs' own allegations. Indeed, each of the Plaintiffs admitted as much in its Rule 30(b)(6) deposition – with each Plaintiff plainly stating that the factual basis for the allegations of the Complaint come from Mr. Squires himself and that Plaintiffs therefore rely on Mr. Squires for such allegations.

11. Although Mr. Squires regularly interrupted the deposition and improperly attempted to coach his witnesses ***(even going so far as to directly answer a question for his witness)***,[8] he could not stop each of the Plaintiffs from truthfully answering about Plaintiffs' wholesale lack of knowledge.

### A. *Adler Medical's Lack of Knowledge*

12. When asked about the factual basis for Plaintiffs' claims, Adler Medical testified as follows:

> Q. (By Mr. DeSouza) So, Ms. Adler, do you have any evidence whatsoever that Harrington knowingly allowed his photographs to

---

[7] While the Complaint is itself signed by Plaintiffs' counsel, each of the Plaintiffs responded to written interrogatories in this lawsuit and provided their signatures thereon. Those interrogatories requested the factual basis for Plaintiffs' allegations, and each of the Plaintiffs responded by merely referring Harrington back to the allegations of the Complaint. See Composite Exhibit "F," a true and correct copy of each of the Plaintiffs' responses to Harrington's First Set of Interrogatories.

[8] See Adler Medical Tr., at 150:1 – 151:13 ("***MR. SQUIRES: Tell him he's wrong.***"). As evidenced by the transcript, Mr. Squires was caught muttering an answer to Mrs. Adler (who quickly parroted the answer in response to a question) and, upon being caught, was not particularly apologetic for his ***outrageous*** conduct.

be on any website other than what you have perhaps learned from your attorney?

MR. SQUIRES: And what she's testified to here, right?

MR. DeSOUZA: I don't care. Let her answer a question. Stop telling me what she's testified to.

Q. (By Mr. DeSouza) Ms. Adler, can you answer my question without your attorney chiming in? Is it possible?

A. I don't think so.

Q. Do you have any knowledge whatsoever on this point other than relying on your attorney as a fact witness?

MR. SQUIRES: Objection as to form. Foundation.

Q. You can answer the question.

MR. SQUIRES: This is a simple question. Stop making it complicated. He's making it complicated. Do you, not -- do you, within your knowledge, know about the facts about Harrington's conduct?

THE WITNESS: No.[9]

\*\*\*

Q. The factual allegations that you make against Mr. Harrington in this complaint, are you relying on Mr. Squires for the accuracy of those allegations?

A. Mr. Squires is my attorney, and I rely on him for all the legalese.

Q. I'm not talking about legalese. This is a factual allegation. You understand the difference between factual and legalese, right?

A. Yes, I do. I'll still be leaning on Mr. Squires for that.[10]

\*\*\*

Q. -- we are here because you filed a lawsuit, and Mr. Harrington filed a counterclaim. That is not the question that I asked you. Okay? The question I asked you is do you have any personal knowledge whatsoever in support of the factual allegations that Mr. Harrington is knowingly allowing his photographs to be online without attribution or that he's luring individuals into downloading those photographs, or are you relying entirely on your attorney for those allegations?

MR. SQUIRES: Objection as to form.

You can answer.

A. Yes.

Q. Yes to what?

A. The latter.

---

[9] Id. at 145:19 – 146:20.

[10] Id. at 157:11 – 157:21.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

> Q. Yes, you are relying on your attorney entirely for those allegations, correct?
> A. Correct.
> Q. Let's move to paragraph 16. Again, you can read the whole thing, but I'm going to focus you on what's in yellow. Let me know when you're ready. A. I'm ready.
> Q. Okay. Ms. Adler, what I have highlighted in yellow begins with Mr. Harrington has long been aware.
> A. Yes.
> Q. And it runs to the end of the paragraph. Do you see that?
> A. Yes.
> Q. Do you have any personal knowledge with respect to this factual allegation, or are you relying entirely on your attorney with respect to that?
> MR. SQUIRES: Object as to form. You can answer.
> A. Relying on my attorney regarding that matter.[11]

### B. *NM CCIM's Lack of Knowledge*

13. When asked about the factual basis for Plaintiffs' claims, NM CCIM testified as follows:

> Q. Okay. That's not the question, though. The question is, how can you say that Harrington knew his photograph was on that website without attribution to him? What are you relying on to say that he knew the photograph was on that website without any attribution to him? You don't know, do you?
> A. I don't know.[12]

> ***

> Q. So what can you point me to, if anything, to suggest that Harrington is luring people into downloading his photographs? I'm looking for facts here. If you don't have any, let me know. But you made the allegation. I'm simply asking you what's your evidence.
> A. I don't know.
> Q. Okay. You don't have any evidence, do you?
> MR. SQUIRES: Objection. Form. Foundation.
> A. I just answered no.
> Q. Okay. Would you have to rely on your lawyer for what evidence may or may not exist with respect to Harrington luring people into downloading his photographs?

---

[11] Id. at 160:2 – 161:13.

[12] See NM CCIM Tr., at 78:5 – 78:12.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

A. Yes.[13]

***

Q. So why are you accusing him of being a copyright troll?
A. I believe they're a factual basis, and I'm relying on my legal counsel.[14]

### C. Xuan Nation's Lack of Knowledge

14. Xuan Nation's corporate representative similarly punted to Mr. Squires for the factual basis for Plaintiffs' factual allegations:

> Q. Okay. How in the world do you know what Mr. Harrington knowingly allows to happen or not? Enlighten me.
> A. So based on the information I get from my attorney, so --
> Q. Well, let me stop you for a moment, sir. Other than information provided to you by your attorney, do you have any clue what Mr. Harrington knowingly allows to happen to his photos?
> MR. SQUIRES: Objection as to form. Do you have any knowledge, you, other than what you heard from me?
> A. No, I don't.[15]
>
> Q. So this is -- you're making a statement. You are saying Mr. Harrington knowingly allows his photos to be out there without his ownership information associated with them. You get that, right?
> A. Yes.
> Q. Okay. Any information you know to support that would have to come from your lawyer, right?
> A. Yes.[16]

***

> Q. What evidence, if any, do you have that Mr. Harrington is trying to lure people into downloading his photographs?
> A. Well, I think that's -- I rely on my attorney.
> Q. Okay. You yourself, at Xuan Nation, don't have any evidence supporting the notion that Mr. Harrington is luring people into downloading his photos, correct?

---

[13] Id. at 82:15 – 83:6.

[14] Id. at 96:22 – 96:25.

[15] See Xuan Nation Tr., at 40:22 – 41:9.

[16] Id. at 41:21 – 42:4.

A. Can you -- I don't understand.
Q. Okay. You said you rely on your attorney, correct?
A. Yes.
Q. Does Xuan Nation have any knowledge, other than what its attorney knows, to support the notion that Mr. Harrington is luring people into downloading his photos?
A. I don't have --
Q. Okay. Any such knowledge would have to come from your attorney, correct?
A. Yes.[17]

***

Q. (By Mr. DeSouza) Mr. Dong, other than information you know about the statements being made there, and other than information from your attorney, does Xuan Nation have any information whatsoever about the statements in paragraph 16 beginning with the sentence Mr. Harrington has long been aware?
A. No.
Q. Okay. You'd have to rely on your lawyer for all that, correct?
A. Yes.
Q. Mr. Dong, in terms of the entire complaint, all of the different allegations that you're making against Mr. Harrington, all of those allegations you have to rely on your lawyer for, correct?
A. Yes.[18]

### D. *Walt Arnold Commercial Brokerage's Lack of Knowledge*

15. Walt Arnold Commercial Brokerage's corporate representative put his own unique spin on the wholesale lack of knowledge as to the facts of the Complaint. He parroted ***at least eleven times*** that 'all he knows' is that Walt Arnold Commercial Brokerage 'received a letter' (the pre-suit demand letter).[19] Other than receipt of a letter, he similarly testified to knowing nothing about the allegations of the Complaint:

16. Mr. Arnold was crystal clear that, other than knowing he received a letter, he is not

---

[17] Id. at 44:4 – 44:24.

[18] Id. at 47:11 – 48:2.

[19] See Walt Arnold Tr., at 16:10 – 16:21; 45:6 – 45:17; 47:7 – 47:19; 48:16 – 48:24; 50:15 – 50:22; 51:9 – 52:22; 54:1 – 54:10; 55:23 – 57:7; 59:3 – 60:7; 64:13 – 65:1.

aware of any other facts supporting Plaintiffs' claims:

> Q. Just one more, I think. Mr. Arnold, other than the letter that you received from my firm, is there any other fact that you can point me to that supports that statement that we've been going on, that Harrington knowingly allows his photos to be available to the public on websites without notice that he's the owner?
> A. Just ask it one more time.
> Q. Other than the letter -- so you've told me you think the letter supports that. Other than the letter, is there any other factual basis, to your knowledge, for that statement?
> A. No.[20]
>
> \*\*\*
>
> Q. Sure. Every one of these allegations we've looked at, Harrington purposefully -- I'm sorry. Knowingly allows his photos to be on websites without attributing them to him. Harrington intentionally puts his photos out there for people to download. All the allegations about what Mr. Harrington does as his business practice, do you have any personal knowledge whatsoever about those, or is that all coming from your lawyer?
> A. Well, I'll say it again. The only thing I can say is that I received a letter from you that I owed $30,000 for a photo that wasn't copyrighted, wasn't watermarked, had no indication we had to pay anybody. There was no previous knowledgement – or acknowledgment saying, hey, you're using our photo, you owe us money. There was nothing. So I go from having a photo on my website to a $30,000 copyright infringement, so that's what I know. I was never given any opportunity during that time to rectify the problem or situation. All of a sudden -- so, I mean, let's let the facts speak in themselves. That's what it is.[21]

IV.  **Mr. Squires' Invocation of the Attorney-Client Privilege as Both a Sword and a Shield**

17. As set forth above, it became painfully obvious during Plaintiffs' depositions that all of the material allegations in the Complaint came from Mr. Squires… a fact that Mr. Squires himself acknowledged:

> Q. Okay. So why are you making this bold assertion that he

---

[20] Id. at 49:9 – 49:21.

[21] Id. at 59:3 – 59:25.

knowingly allowed it if you don't have any evidence?
MR. SQUIRES: She's testified to what evidence she has.
MR. DeSOUZA: I --
MR. SQUIRES: No, because --
MR. DeSOUZA: I don't care what you have to say. You're not going to testify for her.
MR. SQUIRES: I know you don't care, Dan, but I'm going to make statement, and then I'll be
done with it.
MR. DeSOUZA: No, you're not. You are not going to make a statement. I have a pending question. You are absolutely not going to testify for your witness.
MR. SQUIRES: She's answered your question, and I'm going --
MR. DeSOUZA: No, she hasn't.
MR. SQUIRES: She has answered your question. She's answered it four times, and I'm going to state, and then you can ask it again if you want.
MR. DeSOUZA: You are going to pay my attorney's fees for your attorney's conduct.
**MR. SQUIRES: Adler Medical, like all the Plaintiffs in this lawsuit, has relied on its counsel's knowledge of facts that were not necessarily known to Adler Medical at the time, and that is the reason, and you can do with that as you wish**.[22]

18. Given that Plaintiffs are relying exclusively on facts conveyed to them by Mr. Squires (other than Mr. Arnold who presumably would like to remind the Court a twelfth time that he 'received a letter' and that's 'all he knows'), one might expect that Harrington would have been allowed to inquire into what 'facts' were supposedly conveyed by Mr. Squires. Again, that expectation would be incorrect.

19. When undersigned counsel attempted to inquire into what 'facts' were conveyed to Plaintiffs that purportedly support their claims, Mr. Squires effectively used the attorney-client privilege as both a sword and a shield – he blocked any inquiry into the facts, thus leaving no witness other than himself with purported knowledge of Plaintiffs' allegations:

> Q. Okay. You see the sentence that I have highlighted in yellow, Mr. Dong, starts with "Mr. Harrington has long been aware"? Do you

---

[22] See Adler Medical Tr., at 144:4 – 145:9 (emphasis added).

> see that?
> A. Yes.
> Q. From there until the end of paragraph 16, does Xuan Nation have any knowledge whatsoever regarding those statements?
> ***A. We get information from lawyer.***
> ***Q. Okay. What information have you received from your attorney with respect to those allegations?***
> ***MR. SQUIRES: Objection. Privilege.***
> ***MR. DeSOUZA: You're instructing him not to answer?***
> ***MR. SQUIRES: Yes.***
> ***MR. DeSOUZA: Jeff, let me shortcut this. If I ask him to go back to paragraph 11, back to paragraph nine where he says that's information I got from my lawyer, and I asked him what information did you get from your lawyer, would you give him the same instruction not to answer on the basis of privilege? Correct?***
> ***MR. SQUIRES: Yes.***[23]

20. Above are just a few of the myriad examples (there are many others) found in the transcript of the Plaintiffs 'relying' on Mr. Squires for Plaintiffs' own allegations.

## ARGUMENT

**I.     Legal Standard**

"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." <u>Khan v. Barela</u>, No. 15-cv-1151 MV/SMV, 2021 U.S. Dist. LEXIS 98325, at *3 (D.N.M. May 25, 2021) (quoting <u>Hempstead Video, Inc. v. Inc. Vill. of Valley Stream</u>, 409 F.3d 127, 132 (2d Cir. 2005) (internal quotations omitted).

"Plaintiff's right to select counsel, while not an absolute right, may be overridden only where compelling reasons exist." <u>Lajeunesse v. Sallee</u>, No. CIV 98-0416 MV/RLP, 1998 U.S. Dist. LEXIS 24566, at *2 (D.N.M. Oct. 27, 1998); <u>Hobbs v. Bd. of Cty. Comm'rs Cty.</u>, No. CIV 05-237 MCA/RLP, 2006 U.S. Dist. LEXIS 117203, at *4 (D.N.M. Apr. 21, 2006) ("A party has a right to be represented by an attorney of his or her own choosing; however, that right is not

---

[23]     <u>See</u> Xuan Nation Tr., at 46:17 – 47:10 (emphasis added).

absolute. The Court may reject a party's chosen counsel if a compelling reason exists that supports the disqualification of counsel.").

"The Tenth Circuit has held that two sources inform a court's decision when considering a motion to disqualify." Bounds v San Lorenzo Cmty. Ditch Ass'n, No. CIV 09-580-BB/CG, 2011 U.S. Dist. LEXIS 175616, at *5 (D.N.M. July 8, 2011). "First, attorneys are bound by the local rules of the court in which they appear . . . Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law." Id. (quoting United States v. Stiger, 251 F. App'x 508, 511 (10th Cir. 2007)).

"This Court has adopted the New Mexico Rules of Professional Conduct of the Supreme Court of the State of New Mexico." Jacks v. Regis Corp., No. CIV 99-1391 LCS, 2000 U.S. Dist. LEXIS 24547, at *3 (D.N.M. Oct. 27, 2000) (see D.N.M.LR-CIV. 83.9). "The New Mexico Rules of Professional Conduct are based upon that ABA Model Rules of Professional Conduct, which the Tenth Circuit has found 'reflect the national standard to be used on ruling on disqualification motions.'" Id. (see Cole, 43 F. 3d at 1384). "This Court's inquiry focuses on the New Mexico Rules of Professional conduct." Bounds, No. CIV 09-580-BB/CG, 2011 U.S. Dist. LEXIS 175616, at *5.

> New Mexico Rules of Professional Conduct, NMRA, 16-307.
> Lawyer as witness.
> A. Necessary witnesses. A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>     1. the testimony relates to an uncontested issue;
>     2. the testimony relates to the nature and value of legal services rendered in the case; or
>     3. disqualification of the lawyer would work substantial hardship on the client.

Rule 16-307(A) N.M.R.A.24. "The New Mexico Supreme Court, applying this Rule, has noted that 'the burden of establishing that counsel should be disqualified lies with the party seeking disqualification.'" Crespin v. State Farm Mut. Auto. Ins. Co., 2011 U.S. Dist. LEXIS 161621, at *25 (D.N.M. July 12, 2011) (quoting Mitchell-Carr v. McLendon, 1999-NMSC-025, ¶ 39, 127 N.M. 282, 980 P.2d 65); Hobbs, No. CIV 05-237 MCA/RLP, 2006 U.S. Dist. LEXIS 117203, at *4.

## II. Mr. Squires Must be Disqualified

The facts before the Court are eerily similar to those in EEOC v. BOK Fin. Corp., No. CIV 11-1132 RB/LFG, 2013 U.S. Dist. LEXIS 200953 (D.N.M. Apr. 19, 2013). There (as here), a party regularly disclaimed any knowledge about the factual allegations of the plaintiff's (the EEOC) Complaint. There (as here), the corporate representative repeatedly stated that the EEOC's attorney (Mr. Sylvertooth) possessed such knowledge due to his earlier investigative role. There (as here), any attempt to inquire into those facts was blocked with an assertion of the attorney-client privilege. The Court did not mince words in describing this transparent attempt to obstruct the discovery process:

> Kittle was not adequately prepared or knowledgeable for the areas designated in the Rule 30(b)(6) notice. Time after time, she disclaimed knowledge of information without review of specific documents. For example, throughout the deposition, Kittle refused to answer basic questions. Kittle contended that Sylvertooth was her attorney and that information he obtained, even when it was factual information about his earlier investigative role and actions that he

---

[24] "The Committee Commentary states that [c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client. The Comment further states in pertinent part: The tribunal has proper objection when the trier of fact may be confused or misled by a lawyer serving as both advocate and witness. The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." Harvey v. THI of N.M. at Albuquerque Care Ctr., LLC, No. 12-CV-727 MCA/RHS, 2014 U.S. Dist. LEXIS 190720, at *7–8 (D.N.M. Mar. 31, 2014) (referencing Rule 16-307(A) NMRA).

conveyed to Kittle when acting as an investigator, was now
protected by attorney-client privilege. ***This explanation defies
logic***. It is interposed only to obstruct the discovery process and
thwart BAQ's rightful entitlement to discoverable information.

BOK Fin. Corp., 2013 U.S. Dist. LEXIS 200953, at *40–41.

In addition to granting a variety of monetary and non-monetary sanctions for this conduct (which frankly pales in comparison to Mr. Squires' conduct throughout all 4 depositions in this case), the Court in BOK Fin. Corp., likewise ordered:

> EEOC should promptly withdraw Sylvertooth as counsel of record
> in this case due to his status as a witness. If EEOC does not address
> this matter on its own, the Court will act to remove Sylvertooth as
> an attorney in this case.

Id. at *47–48. A review of the docket in BOK Fin. Corp. reveals that the EEOC promptly (and wisely) filed a Notice of Withdrawal of Appearance of Counsel for Mr. Sylvertooth shortly after the April 19, 2013 Order.

Mr. Squires has blurred the line between advocate and fact witness – he has filed a Complaint ostensibly on behalf of Plaintiffs, yet he is the ***only person*** with purported knowledge concerning the evidentiary basis of Plaintiffs' claims. Worse still, he has blocked all efforts to inquire into the 'facts' as supposedly known by Mr. Squires, instead cloaking himself in the veil of the attorney-client privilege in a deliberate attempt to thwart Harrington's entitlement to highly relevant discovery. If anything, Mr. Squires' conduct here is far more egregious than that of Mr. Sylvertooth in BOK Fin. Corp. As set forth above, Mr. Squires has gone so far as mutter answers to his clients (that they quickly echoed as if their own) and otherwise engage in a pattern of improper speaking objections/instructions/statements throughout all of the subject depositions.

To be clear, Plaintiffs' factual allegations are uniquely the creation of Mr. Squires himself. Indeed, Mr. Squires has filed identical claims with identical allegations in multiple lawsuits

involving Harrington and *at least one other photographer* (Christopher Sadowski), all of which are currently pending in the District of New Mexico. These other lawsuits include:

(a) <u>Harrington v. Blue Sky Capital, LLC</u>, Case No. 1:22-cv-00534-KK-JHR

(b) <u>Harrington v. 360 ABQ, LLC</u>, Case No. 1:22-cv-00063-KWR-JHR

(c) <u>Sadowski v. Construction Reporter Digital Magazine LLC</u>, Case No. 1:22-cv-00334-KG-JHR

The *only commonality* between these various parties (Adler Medical, NM CCIM, Xuan Nation, Walt Arnold Commercial Brokerage, 360 ABQ, LLC, and Construction Reporter Digital Magazine LLC) is Mr. Squires. And as identified above, Mr. Squires does not discriminate in his pursuit of the same claims/allegations – he makes *identical* allegations against Mr. Sadowski:

> "*Mr. Harrington* conducts the business of a copyright troll."

> "*Mr. Sadowski* conducts the business of a copyright troll."

> ***

> "Rather than, or in addition to, concentrating his business on the sale or licensing of those images, *Mr. Harrington* has pursued a believed-to-be unique business model, by which he has knowingly allowed his photographs to be available to the public on websites without providing notice that he claims to be the photographer or copyright owner of those photographs, all done intentionally so as not to inform members of the public of his claim to such ownership…."

> "Rather than, or in addition to, concentrating his business on the sale or licensing of photographs, [*Mr. Sadowski*] has chosen to engage in threats and litigation rather than the business of taking and selling photographs, as a source of income. On information and belief he has knowingly allowed his photographs to be available to the public on websites without providing notice that he claims to be the photographer or copyright owner of those photographs, all done intentionally so as not to inform members of the public of his claim to such ownership…."

> ***

> "All the actions described above are a part of a scheme *Mr. Harrington* has developed and pursues in order to lure individuals into downloading images of photographs in which he claims to own

> copyright; to then monitor access to those images by securing the specialized services of one or more companies with expertise in such matters in order to determine who has downloaded them and used them for any purpose that may be determined by access to the internet."

> "All the actions described above are a part of a scheme *Mr. Sadowski* and his lawyers have developed and pursue in order to lure individuals into downloading images of photographs in which he claims to own copyright; to then monitor access to those images to determine who has downloaded them and used them for any purpose that may be determined by access to the internet."

Mr. Squires appears to have forgotten that this is not *his* case, *his* claims, or *his* allegations. Plaintiffs (and each of the other parties represented by Mr. Squires against Harrington and/or Mr. Sadowski) are not proxies/pawns to be used in a personal vendetta against copyright plaintiffs/photographers such as Harrington. The Court should not tolerate the scenario before it. A litigant with a legitimate claim should retain an unbiased attorney to investigate/pursue that claim. An attorney should not invent his own claims and then solicit litigants (such as Plaintiffs) to simply tag along for the ride (all while hiding behind the attorney-client privilege to obstruct discovery into the factual basis for such claims). Mr. Squires' conduct here is improper, egregious, fraudulent, and is certainly behavior that runs afoul of the New Mexico Rules regarding Ethics and Professional Conduct. For the same reasons discussed in BOK Fin. Corp., the Court should disqualify Mr. Squires from further representing Plaintiffs in this lawsuit (and should instruct him to withdraw from the other lawsuits in which he represents parties adverse to Harrington and/or Mr. Sadowski in an effort to preserve judicial resources and maintain the integrity of the judicial process).

"New Mexico requires the moving party to demonstrate necessity as a witness before Rule 16-307 mandates counsel's disqualification. When other witnesses are available to attest to the facts at hand, an advocate's testimony is considered cumulative and the necessity requirement is

not met." Lajeunesse v. Sallee, No. CIV 98-0416 MV/RLP, 1998 U.S. Dist. LEXIS 24566, at *3 (D.N.M. Oct. 27, 1998). There are no other witnesses available to attest to the facts at hand. Mr. Squires' testimony is not cumulative – he is the driving force behind Plaintiffs' allegations (which is simply fiction manufactured by Mr. Squires) and the person that each of the Plaintiffs relied upon in making their allegations.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant respectfully requests that the Court enter an Order: (a) disqualifying Mr. Squires (and Squires Legal) from further representing Plaintiffs in this action; (b) directing Mr. Squires (and Squires Legal) to withdraw from the other above-described lawsuits adverse to Harrington and/or Christopher Sadowski; and (c) for such other relief as the Court deems proper.

## LOCAL RULE 7.1(a) CERTIFICATE

Before filing this Motion, undersigned counsel conferred with counsel for Plaintiffs (Jeffrey L. Squires, Esq.) who indicated that he does not agree to the requested relief.

Dated: September 26, 2022.

COPYCAT LEGAL PLLC
3111 North University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com

By: /s/ Daniel DeSouza_____
      Daniel DeSouza, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

/s/ Daniel DeSouza___
Daniel DeSouza, Esq.